May it please the court, Philip Gallagher for Elmer Gomez-Alvarez. There are two issues in this case, and I'll address them in the following order first, which is actually the reverse of the way they're presented in the brief. First, I'll explain why the government failed to show that Mr. Gomez-Alvarez had failed to meet its burden of showing that Mr. Gomez-Alvarez had a 2006 drug conviction at all, and then I'll explain why, even if that was properly attributable to Mr. Gomez-Alvarez, that the government failed to meet its burden of showing that that was a drug trafficking offense. So the government failed to show that Mr. Gomez-Alvarez had at all a 2006 California drug trafficking conviction. This objection was preserved by the written objection filed before sentencing. The government has characterized this as a one sentence. It wasn't exactly a conspicuous argument. It was left as a tag-in sentence at the end of a much longer-winded argument, and then was never mentioned before the district court. Am I wrong about that? I disagree to the extent of the court suggesting it was one sentence. So if you look on page 67 of the electronic record, so first there's a sentence which I think the government quotes, it has not been established. Let's start with anything. Did counsel say to the district judge that that? No, I don't disagree with that. It was never mentioned in the sentencing. Okay, now what was argued were the other problems with it. Yes. Okay, well now go ahead and answer my other question, I'm sorry. So right, so I disagree that it was just one sentence, though. On page 67 it starts with saying it was a one sentence. So the next sentence is, for these reasons, the government has failed to establish that Mr. Gomez Alvarez was convicted of possession and purchase for sale of a controlled substance. And the first sentence of the next paragraph starts off with, even if the government should produce sufficient documentation to establish the fact of conviction, so referencing back that previous argument. So. The thing, obviously so much sentencing now is built on recidivism statutes. So the priors are vital. And as I understand it, you object to the PSR, but then the addendum misses it completely, is that correct? Yes. And so that would be one time you'd say, no, we really got to get this right. Then you get to sentencing, and sure, it's not forfeited because earlier it was written, but what about the fact that it looks like at sentencing there's a strategic choice to say, okay, it was his, but the drug amount involved wasn't very much. I don't think that first clause was said, Your Honor. Oh, of course you didn't say it was his, but implicit in, let me tell you how little heroin there was, that's in no way preserving the contrary argument. No, I don't, I do not contend that anything at the sentencing hearing preserved this argument. I contend that the written objection preserved it beforehand, and that under this court's precedent, a clear written objection is sufficient to do so. A clear written objection is sufficient, not a conclusory one, and not one that's then relinquished by an opposite or contradictory argument that assumes he did commit the prior one. I don't think this is, this is no different than in Medina-Anacostia, where at sentencing the defendant said, well, treat him as if he had an aggravated felony under these new guidelines that are coming in, and there, and frankly there, the written objection was far less clear than the written objection here. But you, you know those cases better than I do. There was no clarification this was an alternative argument? None at all? No, no more, well again, this wasn't, the objection, I mean, frankly, the fairest way to read the objection in Medina-Anacostia was that this was an objection to whether a possession of a weapon was an aggravated felony, and it happened in the interim when that was changing from being, the aggravated felonies were all plus 16 to being some plus 8. The trouble is, these are so determinative now of sentencing, and they're so easily resolved, right? At that point, the district judge is ready, everyone just says, okay, government, what's your proof? Right, and I, I mean, I think in, in O'Neill, this court observed that the defense attorney could have done, been more clear and more persistent in raising . . . If you get a remand on this, the district court can start again, because the downward departure was based on criminal history, lack of over-representation. So if you get what you want, and you really don't think your client committed that prior one, the sentencing starts again, as I, is that your position? Yeah, I don't think I can argue that the government can't now produce . . . No, but the district court, the district court may say, okay, now that I've looked at the prior history, I don't think that criminal history is so underrepresented. So, it, this is probably something you know to be true or not. He did or didn't commit the earlier one, and the gamble here is if you convince us and vacate remand, you may lose the downward departure you got. You're aware of that? Yes, sir. Okay. Is your client aware of that? Yes, we've discussed, we've discussed with our clients their options on appeal, strategic decisions and all these, in all cases. Okay. Were you original counsel? No, this was a case in McGowan, Your Honor. I'm sorry, so no, I was definitely, I'm not, I'll be honest, I've . . . no, but I know from the record that these discussions were had. Do you think the client and counsel just forgot about it like everybody else? They just forgot that he, they did, it wasn't a strategic decision not to raise it, they just . . . Oh, no, I have absolutely, yes, I have absolutely no indication that this was a strategic decision. I think it was, they were focused on the other objection, which was what was obviously the focus of the addendum, and it got lost in the shuffle. I have, I have absolutely no, I've seen nothing that makes me think this was a strategic decision. In fact, it's hard to see how . . . Everything builds on the prior conviction, and yet, and your defendant knows he didn't do it, and yet, no one brings it up. At the sentencing hearing, right, it was overlooked. Wow, okay. But did he ever say he didn't do it, or did he ever say that he wasn't . . . No, the objection . . . . . . an alias? I'm sorry, but yes, I agree, Your Honor, I mean, to the extent you're clarifying, the objection was that the government didn't meet its burden of proof based on the records here. It wasn't that our client didn't offer evidence that it was not him, that was not . . . Yeah, like, hey, I wasn't in jail those two years, and . . . Right, no, there was not a . . . He did nothing, Your Honor. Right, it was a . . . Does the PSR show that he was in California at the time? The PSR shows . . . well, he certainly has a . . . He's got some connections, and we don't dispute that there are the alias . . . he'd listed the alias in the instant offense that is, corresponds to the person convicted in 2006. And . . . No, I don't . . . I'm sorry, I don't think that's a fair inference, Your Honor. No? Okay. So, I mean, so there are two points. One, there are clearly other things in the PSR, many things that connect him to California, so that, I don't think that's in dispute. That said, there's a later conviction, there's a prior conviction, which we're not objected to as being his. I'm sorry, your question as to . . . Well, I guess . . . Oh, I'm sorry. Once you look at the preponderance of evidence, you've got a rebuttable presumption the PSR is right, you don't offer any rebuttal evidence, so then we just have to decide, does this get that . . . was there sufficient proof to warrant the PSR statement when you don't rebut at all at the sentencing? That's how I'm thinking. And then I say, okay, well, you've got . . . the guy says in this offense, I use an alias that corresponds to the one in his prior conviction. You've got a DOB in this offense that corresponds to the abstract that corresponds to the . . . right? Wrong. Those are in the PSR. The DOB and the alias are in the PSR, but there's no indication that those came from my client as opposed to from the probation officer . . . Yeah, but you accepted . . . you didn't object to the fact of the alias, so you're stuck with that. You didn't make an objection to the PSR's description of the alias as his. That's not something you're asking us to revisit. We're not asking you to revisit that. As a practical matter, in district court, because this comes up quite frequently, Your Honor, when the . . . I have many cases where clients have aliases listed, and then it is just not worth the effort to object to them because the response is always, well, it's in there somewhere, and it doesn't . . . when it doesn't affect sentencing, so . . . Well, you do what you want. If you see something wrong in the PSR, I would never say it's not worth the effort to object, because then you get in exactly the situation we're in here. So if you don't object to something, it now looks like that's a thread that connects him to the prior conviction to me. I think all the other aliases, not admission by my client that he used that alias, it's a determination by the probation officer that this is . . . Unobjected to by your client. Well, we objected that this wasn't his . . . we objected that there wasn't sufficient evidence tying him to this, and, frankly, that's his . . . Well, he also used aliases, but he also changed his birthday. Right, and so . . . It is variable by when he was born, and so you can . . . you have this name, which is not an uncommon Hispanic name, particularly in California, Southwest, but of the same . . . his claims of him just happen to correspond to those particular birthdates that he's claiming at the time. So you've got a . . . there is a birthday identifier . . . There is, and there are . . . I mean, there are two separate record . . . there are two California convictions that have record . . . I'm sorry, that have underlying documents in the record that were introduced by probation, and so for each of the two records, a complaint and an abstract of judgment, each of those four documents has a different date of birth. The one . . . the charging instrument and the abstract, in this case, and the two subsequent ones. So it's . . . the probative value of those is pretty scant. Are you still arguing that it wasn't heroin? Yes. May I make one more point on . . . You may, but you're . . . I will. Okay. I will just say, and then I think this is very much on . . . as far as the preservation I've talked about, I think as far as what actually happens, I think this is very much like Floyd, and because in Floyd there was an objection to whether or not the prior conviction was the defendant's, the probation office actually came back with something there and said, well, we've looked at the mug shot, it looks similar, and this Court still vacated that sentence in Senate. Floyd said, I am not the person who did that. Your client said, the government hasn't given credible evidence to show. That's a significant difference. But it is . . . well, part of the problem in Floyd, though, was that it was unsworn, and I don't think there was any sworn testimony of that in Floyd. And then in Salamanca-Rosas, it was the objection is here, granted that's an unpublished decision. Yeah, no, Salamanca seems closer. Right. But that's unpublished, but Floyd was published. And yes, and then as far as the second argument, I do not think the government has met its burden of showing that the . . . even if that conviction was Mr. Gomez-Alvarez's, that it necessarily involved heroin. This Court spent some time in Lopez-Cano, granted unpublished, but spent some time there going through California pleading practice, and noted that while it is possible for a defendant to plead, that only happens when, in limited circumstances, where the defendant takes a way or pleads quickly and waives his right to further proceedings. And in fact, in Lopez-Cano, there was a docket sheet in the record which showed that this had not happened. And it showed that there had been an intervening information filed, correct? Right. Showed that there had been a subsequent filing. So and then in the new case, the government just from the Ninth Circuit, de la Torre-Jimenez, there was a docket sheet before the Ninth Circuit in that case. And even in this Court's plain error case from last week, Castellon-Aragon, it doesn't look like there was a docket sheet, but there was a notation, excuse me, on the sentencing, the judgment, that the conviction was obtained pursuant to an expedited disposition. And we don't have that in this case either. Why isn't Torres-Diaz, whether you like it or not, sort of foreclosing of this issue? Because there we know there was a docket sheet. And frankly, a docket sheet, I think, would clear it up in this case, because a docket sheet would show whether there were any additional filings after this complaint. Now that isn't gone into in Torres-Diaz, but it's clear that there was a docket sheet in there, which would have made that clear one way or the other, and so not necessary of discussion. But there were additional records in that case than there were here, which is just the complaint in the abstract of judgment, which doesn't reference a specific charging instrument. So, I mean, actually, I think Castellon-Aragon, even though the defendant lost in that case, is a useful counterpoint, because there the standard of view looks like it mattered quite a bit. This was something the court suggested that if it had been raised in the district court, the government could have come back with more documents, and they didn't. Here, of course, there was an objection, and the government didn't come back with any additional documents. And, as I said in there, the evidence was stronger that the complaint was, in fact, the charging instrument, because of that expedited disposition notation. And also in there, the court did not hold that there was no error. It just held that the defendant couldn't meet his burden of showing clear error. If it had been so clear that that was sufficient, the court could have just held that there was no error at all, because the record there had the same documents here, like I said, albeit with more notations. And this is different from this Court's older decision in Torres Diaz. Oh, I'm sorry, Your Honor, I think I may have talked about the Ninth Circuit case when you were asking about Torres, but as far as this Court's Ninth Circuit, Torres Diaz, I apologize if I got those mixed up. I did get those mixed up. Oh, so Torres Diaz doesn't have a docket sheet in it? No. I'm sorry. That's all right. I understand. Go ahead. My response in Torres Diaz is, in that Court, well, one, it was in a different state, and we don't know as much about, this Court hasn't looked into that state's pleading practice. Two, there was an information that was in the record and not the initial complaint. The parties appear to have referred to it as an indictment. The Court makes clear that it was an information, so something later on in the process than here and something that would be sufficient to carry the charge, with absent a waiver, presumably. And then finally, we talk about Moncrief. I think in Moncrief, even though it's addressing slightly different concerns, it talks about the need for certainty. And there, the Court was looking at a statute that had both felony and misdemeanor provisions, and the government said, well, these are almost always felonies, so let the defendant come back and show that it's a misdemeanor if that's what it was. And the Court said, no, that's not enough, even though that may well be, and there are precedents from various courts saying that the government doesn't even need to disprove that at a trial on the federal drug trafficking statute, that they need to do more. They need to show that, in fact, he was convicted of a misdemeanor. And that kind of certainty, even, we know here there's at least the possibility, a strong possibility that there's a subsequent charging instrument, the mere getting of a docket sheet would clear up. And it was not done here despite objection. And so for that reason, the government failed to meet its burden of showing that this was a drug trafficking offense. All right. Thank you. Mr. Barry? May it please the Court, Richard Barry for the United States. If I could, I would address Judge Higginbotham and Judge Higginson's questions first, as my learned opponent did. There is nothing whatsoever in the record to suggest that there was another charging instrument. There is only the California felony complaint coupled with an abstracted judgment. This Court's criticized the use of the abstracted judgment. The Ninth Circuit, of course, relies on it extensively. In relation to whether or not there's anything to tie this defendant to California, he was released from prison in August of 2007 on this conviction and deported the same day, according to the PSR. Also, the California felony complaint references a prior conviction, which is discussed in paragraph 27 of the PSR. I respectfully submit that one of the birth date on the complaint and the birth date on the abstract are different birth dates, but each of those two are the same as birth dates that he has used. One of them may be his actual birth date, as indicated in the PSR. The other is an alias birth date. This is one of approximately 13 alias names that he has used. So the judgment and conviction and the PSR in this case say, what, January 9, 1978? I believe that it's the actual birth date and that felony complaint that has the actual birth date and the abstract of judgment that has an alias birth date. So I don't really see how the abstract—admittedly, it's an interesting question, the reliability of abstracts in California, but I don't see how it helps as to either of the two questions before us. The abstract doesn't really confirm identity, I don't think, and it doesn't at all confirm drug type. Well, I would respectfully submit that it does. It has— Does do both? I would respectfully submit that it does. Okay. It has the same California inmate number, it has the same offense number, it has the same cause number. So it corresponds to the complaint, but not as to drug type, does it? No, it does not. The complaint itself sets out the drug, heroin. So we don't use the abstract at all to address the divisibility problem? No. Okay. The abstract is simply used to verify the fact that there was a conviction. The drug type comes from the California felony complaint, which tracks the language of 11-351 and says, to wit— And that, then, Torres-Diaz seems conclusive you ought to win. Well, yes, sir, Your Honor, I would respectfully— But you didn't cite Torres-Diaz at all? No, I didn't. And that would be my stupidity and certainly not something that should be held against the United States. No, I agree, but you cited Palacios, and I don't see how Palacios helps. Palacios is— Well, Palacios was not addressing the same argument, but it did say that 11-351 can be treated as a divisible statute and that you can look at the felony complaint in the absence of any information suggesting that there's another charging instrument, as is the case here. Okay, back on the, yeah, the addendum, okay. In addition, under Neri Hernandez and a number of other cases, this Court has said, in essence, the District Court can use the documents available to it, the California felony complaint and the abstract of judgment, particularly whereas here the District Court had received an unpublished opinion the day before this sentencing affirming precisely the same procedure. I have an out-of-state California charging instrument, and I believe that was also a California felony complaint, and an abstract of judgment. Judge Crane used the two, and a panel of this Court affirmed that in Cruz-Compos, which, as he noted at the sentencing hearing, had been handed down the day before. As to your initial questions, I would respectfully submit that I was correct in the brief. There is one single sentence in a six-page objection in which he claims that I am not the person convicted in 2006 in California. Am I right? When I look at the PSR, it looks like the probation officer was desperately trying to get the tie-up documents, both from the archives in California and from the U.S. probation there, and they just didn't come in time. You are absolutely correct. There's a five-page addendum to the PSR. The probation officer said that he had repeatedly contacted the authorities in California, both the state authorities and the U.S. probation office in California. He does mention sentencing minutes, which are not in the record that I had access to. He had repeatedly requested the documents, and the documents had not appeared, which distinguishes this from viewing a mugshot and then simply stating in open court, I have looked at the mugshot, and in fact, Barry is the same person as the person in the mugshot. On that basis, Floyd would be distinguishable. You handled the sentencing? No, sir, Your Honor. I didn't. When you read it, does it look like the argument that was made to get a downward departure is inconsistent or is that overreaching? In other words, the district court didn't say, oh, that prior didn't have so many drugs, so I'm going to give you less, right? My reading of the sentencing, Your Honor, would be that there was an argument as to whether or not it was a crime of violence warranting the sixteen-level departure, and then an immediate request for either a departure or a variance in light of the fact that the defendant has a seven-year-old daughter and the fact that he had two priors that added criminal history points that were not perhaps quite so serious, and then defense counsel said this was not so much heroin as this court has seen in cases crossing the Rio Grande, to which the district court said a hundred grams of heroin is a very serious quantity of heroin. The prosecutor noted that, and actually, he has four prior convictions involving drugs. The prosecutor noted that had the hundred grams been tried in federal court, he would have probably qualified for the five-year mandatory minimum. The district court responded, had one of his prior drug felonies been used for enhancement purposes, the mandatory minimum sentence would have been substantially beyond five years. But sixteen levels, if it wasn't the guy, no one wants that. There was absolutely nothing, and I respectfully stand by my guns. As I said in the brief, there's not a single word to Judge Crane. The sentencing is twenty minutes. It's perfectly standard, and there was never a word. What about the law that says if he puts a written objection in, there it is? And I would respectfully suggest that Judge Jones' opinion and Chavez-Hernandez addresses that. That's more of, oh, there shouldn't be an enhancement here. No clarification with the argument. This one, admittedly, it's a sentence, but it's clear as day. I'm not the guy who committed the prior. That's a very different circumstance. Of course, it's ambiguous and not clear enough if you just say, don't give me the enhancement, and no one knows the legal, factual theory, whatever. That I agree with you. But here, there's no misunderstanding what he's saying. He's saying, I'm not the Jorge, whoever, Ortiz that did it. That is correct, Your Honor. But that was the same one of the clauses in the sentence that Judge Jones cited in Chavez-Hernandez also said, there's no showing that I'm the person who did it. I'm asking a lot, and I want to let you call it, but remind me what happens. Let's say he had objected clearly, crystally at sentencing. What does the government do to prove it up? Obviously, we would have asked for an extension and tried. But what do you? Remind me, how do you prove it up? We would have gotten all the documentation that we could get from the California state authorities, the charging document, the docket sheet, and the judgment, which presumably would have fingerprints on them. It would have to, because if a guy has DOBs that are changing, and an alias, the name in the DOB is not going to help. So you actually have to, okay, so the archives, that's a lot of paperwork. But as you said, the probation officer was trying to get what documentation he could get, as noted in the addendum to the PSR, and the probation officer did not say anything at all about the one sentence objection to, I am not the person in that 2006 conviction. So that wasn't really an issue. Sorry, Your Honor. That wasn't really an issue. Otherwise, you could have asked for a continuance. Well, not you, but. Right, yes. Prosecutor. Yes, Your Honor. Could have and would have. It's very imperfectly presented. However, it's also very consequential, because for a circuit court to say, well, there doesn't have to be much proof. When they say, I didn't do the prior, that's enhancing by 16 levels. And we're being asked to say, well, there's enough because the alias connects to the DOB, and that would be a consequential ruling by us. And no one wants to get these things imperfect, because recidivism drives these sentences. So what's your legal argument to us? Are you saying that he objects, and yet, therefore, the burden is for him to rebut it? To rebut that he didn't commit the prior? What's the? My legal argument is that under Judge Jones' opinion and Chavez-Hernandez, he did not draw the court's attention to the objection. It is a single, isolated sentence in a seven-page set of objections, the overwhelming majority of which are directed to this California drug trafficking crime does not follow. If we find he did object, do you lose? No, I would respectfully submit it could be remanded to the district court for the submission of additional documents. Oh, I agree. But you wouldn't have any other theory before us to try to defend it? No, I would not. I would submit that under Chavez-Hernandez, it's plain error of view, and there is literally nothing in the record to suggest that there was another charging document. Well, that's the heroin issue. I'm just talking about the identity issue. I think the heroin issue is clear. Did I address your question, Judge Clement? If the Court has nothing further, I would respectfully request affirmance of the conviction and the sentence. Thank you. All right. Thank you, Mr. Barry. Mr. Gallagher, you have some time for rebuttal. Thank you, Your Honor. I'll just press the point there between minor points. First, this is minor, but the Cruz-Campos unpublished case that Judge Crane was considering at the time of the sentencing that he was talking about, that was related to a Pennsylvania statute procedure, much like Torres-Diaz. It wasn't related to the California statute or procedure like here. Also, and I think, Judge Higginson, I disagree slightly with your understanding of what the Probation Office was doing to get records in response to the objection. I think if you look at the addendum, sorry, this is page 106 of the electronic record, the Probation Office makes clear they got records in relation, they got what they were looking for in relation to the 2006 conviction. There's a separate conviction that came later under a separate docket number, which is the one talked about in the last paragraph, where they're saying the archives don't have what they want. And that's related to a subsequent transportation conviction that Mr. Gomez had in the PSR. But for this conviction, they had what they wanted, and actually, it looks like the Probation Office actually had a transcript, which was never given, was never produced for the record for whatever reason. But they referred to a transcript of the sentencing hearing also. You're reading the PSR? The addendum, Your Honor? Yeah, the addendum. So that, for whatever, it's unclear exactly what that transcript said, because like I said, it's not in the record, but they had it, and it doesn't, it certainly doesn't clear up what the, it doesn't appear to clear up what was the charging instrument that Mr. Gomez pleaded guilty to. And I'll just conclude by saying, on the first issue regarding the sufficiency of the objection and all that, right now, I think the Court's got a pretty clear workable rule. If you've got a clear objection in writing, that preserves it for this Court. The government's calling for something else, of whether a persistence rule or something, looking at how much you, whether you re-raise it later, and I think that's inconsistent with this Court's precedent. This objection here, as you pointed out, Judge Higginson, is perfectly clear. I think as a matter of practice, I can't disagree that it should have been raised at sentencing, but I think under this Court's precedent, it's clear that it was sufficient to preserve it for review in this Court. There's no question what the objection was to. It couldn't have been taken any other way, like in Chavez-Hernandez and other things, when people are, you know, we've all seen vague objections made to sentencing enhancements. That's not what this is. This is a very specific objection in writing that just wasn't raised a second time, but it was raised once in writing that's sufficient for this Court. Yeah, it's interesting. It wasn't raised, but also an argument was made factually that if he'd gotten a bigger downward departure, he may have said, okay, I'll live with that outcome, but I've got a built-in reversible error if I don't get what I want. Realistically, it's hard to see how this, it's hard to see how that, I'm just trying to work out the permutations, right? So assume the client, assume it was perfectly clear and we could have, you know, the defendant could have produced evidence that it was not him, but he withheld it for some reason. Not even produced evidence, just said what he said before, which is, you got the wrong guy. I shouldn't get 16 levels. Everyone must have known that. Right. Him and his lawyer. And they chose not to. Instead, they said there wasn't as much heroin. That would be, as much as I disagree with the, as I concede that as a matter of practice, this could have been best raised at sentencing as well. That would have been abysmally bad lawyering, because if to prevail on a 16-level enhancement could serve— It's not abysmally bad if he did it. If he did the prior, they confirmed it in between the time. They make the objection. PSR says nothing. No, you did do it. They read. They find out. Yeah. They talk to him. He did do it. Only option you've got is argue it wasn't that bad. Now— But now— Nothing wrong with that lawyering. But now, it's hard to see how that, how he gets in a better position by sitting this down. So, so we come up here and have a remand— Anyway. I think I, I understand your argument. But he gets down there. He's either, either the government's going to prove it up, in which case he's in the same position he's now, or they can't, in which case he would have been better all along to have it preserved from the get-go and had it fully litigated and raised, because he would have wound up, almost certainly, with a lower sentence than he wound up with the judge overruling that objection, or implicitly overruling that objection. Well, if it wasn't, if he wasn't the one, you're presuming. Right. But I'm just saying, it's hard to imagine how this strategy can possibly yield a better result for him than what he got. So I don't think— Be careful what you ask for. I don't think there's any basis to conclude that this was a strategic choice, or would—or make strategic choices like this to sit back on objections more likely. I mean, winning on a 16-level enhancement is always the way to go, and if you don't, if you can't win on it, you need to focus—and frankly, lawyers need to focus their sentencing practice on something else they can win on, like is, frankly, is what happened here, even based on the actual facts of the client's history.  Thank you.